IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL DISSLER. | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | No. 3:20-cv-00942-D (BT) |
| | § | |
| K. ZOOK, WARDEN. | § | |
| | § | |
|     Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

*Pro se* Plaintiff Michael Dissler, a federal inmate, seeks monetary damages from Defendant K. Zook, the Warden of FCI Seagoville pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971). *See* Complaint (ECF No. 3). The Court granted Dissler leave to proceed *in forma pauperis* but withheld issuing service pending judicial screening. *See* Order (ECF No. 5). Dissler also completed a Magistrate Judge's Questionnaire, in which he clarified his claim. *See* Magistrate Judge Questionnaire and Dissler's Response to Same (ECF Nos. 6 and 7). Having screened the case, the Court recommends dismissing Dissler's complaint with prejudice because *Bivens* does not provide a remedy for his claims.

**Background**

Dissler claims that, after exhausting a grievance procedure, and due to his underweight physical condition and memory issues, he was approved

1

to "move to the front of [the] National Dental Wait List to get immediate dentures."[1] (ECF No. 3 at 6). But Dissler alleges that after nearly two years he has yet to receive his dentures. *Id.*

Dissler alleges he was initially taken to an outside specialist to have his upper jaw and gums "grinded down" so that his dentures would fit. *Id.* Dissler took months to heal following this procedure. *Id.* Then, the FCI Seagoville chief dentist, Dr. Perez, made a gel mold of Dissler's jaw. *Id.* Months later, "[d]ental called [Dissler] out to get the dentures." *Id.* But the upper dentures were too tight, which caused Dissler pain when biting down and trying to chew food. *Id.* Dr. Perez attempted on multiple occasions to mechanically grind down the sides of Dissler's dentures to allow them to fit his upper jaw, but this did not alleviate the problem. *Id.* Rather than making "another simple gel mold" for a new pair of dentures, Dr. Perez continues to try and grind the dentures down and has "sent them to be repaired several times by outside business." *Id.*

Dissler alleges that he has endured pain and suffering, weight loss, and the inability to chew food without the use of teeth because of the nearly-two-year delay in obtaining his dentures. However, Dissler does not sue Dr.

---

[1] Dissler attached various administrative requests and responses to his Complaint relating to his dental treatment. *See* Complaint (ECF No. 3 at 8-17). The Court reviewed these documents carefully, but—because they do not alter its analysis or ultimate recommendation—it does not describe or discuss them in detail.

2

Perez. Instead, he only names Warden Zook, alleging that as Warden, Zook oversees all operational aspects of FCI Seagoville. *See* Dissler's Response to Magistrate Judge Questionnaire (ECF No. 7 at 3). Thus, Zook is aware that the dental department is understaffed and behind schedule. *Id.* Dissler also alleges that Zook refuses to reprimand Dr. Perez for failing to perform his official duties, and that Warden Zook demonstrates deliberate indifference in performing her official duties as warden. *Id.*

## Legal Standards

Dissler's complaint is subject to preliminary screening under 28 U.S.C. § 1915A. That section provides in pertinent part:

> The court shall review . . . as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity [and] [o]n review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from suit.

28 U.S.C. § 1915(A)(a) and (b).

Under 28 U.S.C. § 1915(e), a district court may also summarily dismiss a complaint filed *in forma pauperis* if it concludes the action is: (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

To state a claim upon which relief may be granted, a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level[.]" *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## Analysis

Dissler seeks monetary relief from a federal officer, so his claim arises under *Bivens*. In *Bivens*, the "Supreme Court recognized an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Byrd v. Lamb*, 990 F.3d 879, 881 (5th Cir. 2021) (per curiam). Whether a claim is cognizable under *Bivens* is "antecedent" to the question of qualified immunity. *Hernandez v. Mesa* (*Hernandez I*), 137 S. Ct. 2003, 2006, 198 L.E.2d 625 (2017).

The availability of a *Bivens* claim arises only in limited circumstances. *Byrd*, 990 F.3d at 882. The Fifth Circuit recently confirmed that *Bivens* claims are currently-recognized in only the following factual situations: "(1) manacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment . . . ;" (2) "discrimination on the basis of sex by a congressman against a staff person in violation of the Fifth

4

Amendment . . .;" and (3) "failure to provide medical attention to an asthmatic prisoner in federal custody in violation of the Eighth Amendment." *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) (citing *Bivens*, 403 U.S. at 389-90, 91 S. Ct. 1999; *Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264, 60 L.Ed.2d 846 (1979); *Carlson v. Green*, 446 U.S. 14, 100 S. Ct. 1468, 64 L.Ed.2d 15 (1980)). And "[t]he Supreme Court has cautioned against extending *Bivens* to new contexts." *Byrd*, 990 F.3d at 881 (citing *Hernandez v. Mesa*, (*Hernandez 2020*), 140 S. Ct. 735, 744, 206 L.Ed.2d 29 (2020) (holding that the plaintiff's *Bivens* claim arose in a new context, and factors, including the potential effect on foreign relations, counseled hesitation with respect to extending *Bivens*); *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1861, 198 L.Ed.2d 290 (2017) (holding that plaintiff's detention-policy claims arose in a new *Bivens* context, and factors, such as interfering with sensitive Executive-Branch functions and inquiring into national-security issues, counseled against extending *Bivens*)). "In fact, the Supreme Court has gone so far as to say that extending *Bivens* to new contexts is a 'disfavored' judicial activity." *Byrd*, 990 F.3d at 881 (citing *Abbasi*, 137 S. Ct. at 1857) (in turn quoting *Iqbal*, 556 U.S. at 675).

Although extending *Bivens* to new contexts is disfavored, "[t]he Supreme Court has provided a two-part test to determine when extension would be appropriate." *Byrd*, 990 F.3d at 881. "First, courts should consider whether the case before it presents a 'new context.'" *Id.* (citing *Hernandez*

5

*2020*, 140 S. Ct. at 743). And virtually everything outside the specific circumstances presented in *Bivens*, *Davis*, and *Carlson* presents a "new context." *Oliva*, 973 F.3d at 442. (The Supreme Court's "understanding of a 'new context' is broad"—"'even a modest extension' of the *Bivens* trilogy 'is still an extension.'" ) (citing *Hernandez 2020*, 140 S. Ct. at 743; *Abbasi*, 137 S. Ct. at 1864).

The critical question is not whether the claim arises under the same amendment at issue in *Bivens*, *Davis*, or *Carlson*, but rather, whether the case "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Abbasi*, 137 S. Ct. at 1859; *see also Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019) ("Courts do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-searches-and-seizures clause.'"). "Indeed, it is not enough even if 'a plaintiff asserts a violation of the same clause of the same amendment *in the same way*.'" *Oliva*, 973 F.3d at 442 (quoting *Cantú*, 933 F.3d at 422) (emphasis in original); *see also Canada v. United States*, 950 F.3d 299, 307 (5th Cir. 2020) ("Canada contends that the Supreme Court recognized a *Bivens* claim for Fifth Amendment Due Process violations in *Davis*, and thus his claims do not present a new Constitutional context. His reliance on *Davis* is misplaced. The Supreme Court has made clear that claims for violations of Fifth Amendment rights can still be brought in a new context. To be sure, '[n]o one thinks *Davis*—which permitted a

congressional employee to sue for unlawful termination in violation of the Due Process Clause—means the entirety of the Fifth Amendment's Due Process Clause is fair game in a *Bivens* action.'") (quoting *Cantú*, 933 F.3d at 422) (internal citations omitted). The Supreme Court has provided a nonexhaustive list of "meaningful differences," which include differences in "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Abbasi*, 137 S. Ct. at 1859-60.

Then, "[o]nly where a claim arises in a new context should courts . . . proceed to the second step of the inquiry, and contemplate whether there are 'any special factors that counsel hesitation about granting the extension.'" *Id.* (quoting *Hernandez 2020*, 140 S. Ct. at 743). The Supreme Court has not defined "special factors counselling hesitation," *Abbasi*, 137 S. Ct. at 1857-58, but "[s]ome recognized special factors to consider include: whether there is a 'risk of interfering with the authority of the other branches,' whether 'there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy,' and 'whether the Judiciary is well suited, absent congressional action or instruction, to consider and

7

weigh the costs and benefits of allowing a damages action to proceed.'" *Byrd*, 990 F.3d at 881 (quoting *Hernandez 2020*, 140 S. Ct. at 743). "When a party seeks to assert an implied cause of action under the Constitution," as in this case, "separation-of-powers principles . . . should be central to the analysis." *Abbasi*, 137 S. Ct. at 1857.

Here, the Court finds that Dissler's deliberate indifference claim for inadequate dental treatment arises in a new context. Dissler maintains that his claim arises under the Eighth Amendment, as did the plaintiff's claim in *Carlson*. But "simply because *Carlson* extended *Bivens* to allow an Eighth Amendment claim by a federal prisoner in that context, does not mean that [Dissler] may rely upon *Carlson* in this context." *Nabaya v. Bureau of Prisons*, 2020 WL 7029909, at *3 (N.D. Tex. Oct. 7, 2020), *rec. adopted*, 2020 WL 7027470 (N.D. Tex. Nov. 30, 2020) (citing *Gonzalez v. Hasty*, 269 F.Supp.3d 45, 64 (E.D.N.Y. 2017) ("Although the Supreme Court recognized a *Bivens* remedy under the Eighth Amendment in *Carlson*, this does not mean all Eighth Amendment claims have a *Bivens* remedy.") (further citations omitted)).

A recently-issued decision of this Court also dealing with a *Bivens* claim in the context of dental treatment is instructive. *See Nabaya*, 2020 WL 7029909, at *3. In *Nabaya*, the plaintiff asserted an Eighth Amendment deliberate indifference claim for pain and suffering caused by inadequate dental care where the dentist refused to use a numbing solution before using

8

a large needle to remove a tooth, exposed him to x-rays to see his dental condition, and where the dental assistant caused him injury by "sawing down" on his gums with dental floss three times. *Nabaya*, 2020 WL 7029909, at *1. The Court found that the plaintiff's *Bivens* claims arose in a new context:

> This case meaningfully differs from *Carlson*, in which "the Supreme Court held that the Eighth Amendment gave a prisoner's estate a monetary remedy because the federal jailers caused the prisoner's death by failing to treat his asthma." *Gonzalez*, 269 F.Supp.3d at 64. "Here, the deprivations, if one can even call them that, are vastly less serious." *Id*. Specifically, the facts underlying Nabaya's claims, set out above, demonstrate that he has failed to identify a specific physical injury and, at most, has alleged a claim of negligence that lacks enough facts to show (or from which it may be inferred) that the individual defendants acted with deliberate indifference such as to cause the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)); *see Alvarez v. City of Brownsville*, 904 F.3d 382, 391 (5th Cir. 2018) (en banc) ("Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely unintentionally negligent oversight." (quoting *James v. Harris Cnty.*, 577 F.3d 612, 617-18 (5th Cir. 2009) (quoting, in turn, *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)))). So, at least here, "the lack of merit to the medical claims and whether to find a remedy merge to weigh against the creation of a *Bivens* remedy." *Gonzalez*, 269 F.Supp.3d at 65.

*Id*. at *4 (footnote omitted).

The same is true here. In contrast to the failure-to-treat claim that resulted in a prisoner's death in *Carlson*, Dissler alleges far less serious injuries. Further, he has set out facts that demonstrate, at most, negligence, and not deliberate indifference such as to cause the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. Indeed, Dissler did not even name Dr. Perez, only the warden, Zook, as a defendant. But he alleges no facts from which the Court could infer Zook's deliberate indifference. *See* (ECF No. 7 at 3). So here, as in *Nabaya*, the failure-to-provide-dental-treatment claim arises in a new context for purposes of stating a *Bivens* claim.

Turning to the second part of the analysis—whether special factors counsel against the extension of *Bivens*—the Court finds that such factors exist and that the *Bivens* remedy should not be extended to cover Dissler's claim. Specifically, "the administration of the federal prison system qualifies as a special factor that should prevent the Court's creating an implied cause of action under *Bivens* for the contexts presented by this case." *Nabaya*, 2020 WL 7029909, at *5 (citing *Petzold v. Rostollan*, 946 F.3d 242, 248 n.2 (5th Cir. 2019) ("[W]e are unlikely to imply a *Bivens* remedy for this new context as 'special factors' counsel hesitation in federal prison administration.") (citing, in turn, *Abbasi*, 137 S. Ct. at 1857-58 ("[T]he [special factors] inquiry [ ] concentrate[s] on whether the judiciary is well suited . . . [to] weigh the costs and benefits of allowing a damages action . . .

."); *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 524 (6th Cir. 2020) ("'[L]egislative action suggesting that Congress does not want a damages remedy' counsels against judicial do-it-yourself projects. Congress paid close attention to inmate constitutional claims when it enacted the [PLRA]. The Act 'does not provide for a standalone damages remedy against federal jailers.'") (quoting *Abbasi*, 137 S. Ct. at 1865) (citations omitted)). Thus, *Bivens* does not supply a remedy for Dissler's claims, and his complaint should be dismissed with prejudice.

Ordinarily, a *pro se* litigant should be afforded an opportunity to amend his complaint before it is dismissed. *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curium). However, leave to amend is not required when the plaintiff "has already pleaded his 'best case.'" *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). This Court has already given Dissler the opportunity to supplement his complaint through his answers to the Magistrate Judge's Questionnaire. Thus, the Court concludes that granting leave to amend under these circumstances would be futile and cause needless delay.

## Recommendation

The Court should summarily dismiss Dissler's claims with prejudice under 28 U.S.C. §§ 1915A and 1915(e)(2).

11

Signed May 7, 2021.

                                               REBECCA RUTHERFORD
                                               UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).